**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 29 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LUXI YANG, | No.    18-72206 |
| Petitioner, | Agency No. A205-186-734 |
| v. | |
| JEFFREY A. ROSEN, Acting Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 9, 2020**
Pasadena, California

Before:  KELLY,*** GOULD, and R. NELSON, Circuit Judges.

Yang, a native and citizen of China, was admitted to the United States in

February 2012, as a nonimmigrant visitor, with authorization to remain until August

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*       The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

2012. Yang came to the United States after being arrested and detained by the police following a dispute about the demolition of his parents' home.

After he was served with a Notice to Appear, Yang filed an application for asylum, withholding of removal, and CAT protection under the Convention against Torture ("CAT"). Following a hearing, the IJ denied his applications. Yang appealed to the BIA, and the BIA also denied his applications. This appeal followed.

When the BIA issues its own decision, but relies in part on the IJ's reasoning, we review both decisions. *Flores-Lopez v. Holder*, 685 F.3d 857, 861 (9th Cir. 2012). We review claims of due process violations *de novo*. We reverse these claims only if petitioner shows that the proceeding was "so fundamentally unfair" that he "was prevented from reasonably presenting his case," and he was prejudiced. *Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016) (citations omitted). We review the agency's factual determinations under the substantial evidence standard, meaning that the agency's determinations are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B); *Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016). We must uphold an agency determination "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). To reverse the agency's finding, we must determine "that the evidence not only supports [the contrary] conclusion, but compels it." *Id.* The substantial evidence

2

standard also governs review of the agency's application of legal standards to the facts of the applicant's asylum or withholding claim.  *See id.* at 483-84.

To be eligible for asylum, an alien must qualify as a "refugee."  8 U.S.C. § 1158(b)(1).  A "refugee" is defined as a person who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(1)(42)(A).  An alien may be eligible for withholding of removal if, upon return to the alien's country, there is a clear probability the alien will be subject to persecution on account of one of the same five protected grounds.  8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b), (b)(2); *INS v. Stevic*, 467 U.S. 407, 424-425, 429-430 (1984).  "Persecution is 'an extreme concept that does not include every sort of treatment our society regards as offensive.'"  *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (citation omitted);  *see also Nagoulko v. INS*, 333 F.3d 1012, 1017 (9th Cir. 2003).  To meet the "threshold level" for conduct to qualify as "persecution," the conduct must be "severe."  *Matter of T-Z*, 24 I. & N. Dec. 163, 172-73 (BIA 2007).

Yang did not show that the mistreatment he experienced rose to the level of persecution.  Substantial evidence supports the denial of asylum and withholding of removal.  In similar and even more extreme cases, we have held that the treatment did not amount to persecution.  *See e.g.*, *Hoxha v. Ashcroft*, 319 F.3d 1179, 1181-82

(9th Cir. 2003) (stating that even the presence of harassment, threats, and one beating resulting in bruises and broken ribs did not compel a finding of persecution).

Further, the single alleged threat from police does not constitute past persecution. The record shows that Yang's mistreatment did not rise to the level of persecution.

Yang also did not establish the requisite nexus between harm and a protected ground. Because "the statute makes motive critical," a petitioner "must provide some evidence of it, direct or circumstantial." *Elias-Zacarias*, 502 U.S. at 483. The basic motive element requires that the wrongdoer knew or believed that the victim had the protected characteristic and also that this knowledge or belief motivated the wrongdoer to commit the acts in question. *Khudaverdyan v. Holder*, 778 F.3d 1101, 1106 (9th Cir. 2015). But "if the persecutor has no idea what the victim's political opinion is and does not care what it is, then even if the victim does reasonably fear persecution, it would not be 'on account of' the victim's political opinion." *Barajas-Romero*, 846 F.3d at 357. Substantial evidence supports the agency's determination that Yang was detained because he impeded the government's development project, not because of his actual or imputed political opinions. Because Yang has not established that he was harmed as the result of his actual or imputed political opinions, he also has not established his claim of future persecution on that basis.

4

Because he has not shown a political motive for his fears of past or future harm, he has not established he is eligible for asylum and withholding of removal.

Substantial evidence also supports the BIA's denial of Yang's CAT protection application. Yang has not shown he was more likely than not to be tortured by the Chinese government.

Finally, Yang has not established that a due process violation has occurred. To demonstrate a due process violation in his removal hearing, Yang must show that his removal proceeding "'was so fundamentally unfair'" that he "'was prevented from reasonably presenting his case.'" *Rizo*, 810 F.3d at 693 (citation omitted). But "[e]ven if [his] removal hearing was conducted in a fundamentally unfair manner," Yang must show prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation.'" *Id.* (citation omitted). That there was a missing part of Yang's testimony transcript was not "so fundamentally unfair" as to deprive Yang of due process. *Id.* (citation omitted). He was still able to both present his case to the IJ and appeal properly to the BIA. The IJ made a thorough summary, and Yang did not even disagree with its contents. Yang has also not demonstrated prejudice. Importantly, Yang has not shown that if the testimony transcript was included, the agency might have concluded the harm he experienced was persecution, and that he was targeted, at least partly, because of his actual or imputed political opinion.

**PETITION DENIED.**